64 F.3d 497
 150 L.R.R.M. (BNA) 2065, 64 USLW 2142,
130 Lab.Cas. P 11,386,
2 Wage & Hour Cas.2d (BNA) 1495,
95 Cal. Daily Op. Serv. 6703,
95 Daily Journal D.A.R. 11,483
 CHAMBER OF COMMERCE of the UNITED STATES, on behalf of its
members, Plaintiff-Appellee,
v.
Harvey BRAGDON, Contra Costa City Zoning Administrator and
Director of Community Development; Contra Costa County
Department of Building Inspections, The County of Contra
Costa, The Contra Costa County Board of Supervisors,
Defendants-Appellants,
Northern California and Northern Nevada Pipe Trades District
Council # 51, Contra Costa Building and
Construction Trades Council,
Intervenors-Appellants.
 Nos. 91-16397, 91-16399.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1992.
Decided Aug. 24, 1995.
 
 Michael Gottesman, Georgetown University Law Center, Washington, DC; Lillian T. Fujii, Deputy County Counsel, Martinez, CA, for defendants-appellants.
 Rosemary M. Collyer, Crowell & Moring, Washington, DC; James Severson, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for plaintiff-appellee.
 Thomas R. Adams and Ann Broadwell, Adams & Broadwell, San Mateo, CA, for intervenors-appellants.
 Robert Fried, Thierman, Cook, Brown & Prager, San Francisco, CA, for amicus.
 Appeals from the United States District Court for the Northern District of California.
 Before: HUG, FLETCHER, and BRUNETTI, Circuit Judges.
 Opinion by Circuit Judge HUG; Concurrence by Circuit Judge FLETCHER.
 HUG, Circuit Judge:
 
 
 1
 The question in this case is the validity of an ordinance mandating that employers pay "prevailing wages" to their employees on wholly private construction projects. The district court found that the Ordinance was pre-empted by the National Labor Relations Act, 29 U.S.C. Secs. 157-158 (1988) ("NLRA"), and the Employee Retirement Income Security Program Act, 29 U.S.C. Secs. 1001-1461 (1990) ("ERISA"), and was a violation of the Contracts Clauses of the California and United States Constitutions. We hold that the Ordinance is invalid because it is pre-empted by the NLRA and, thus, do not reach the other grounds upon which the district court based its decision.
 
 
 2
 The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1331 (1988). The appeal is timely, and this court has jurisdiction under 28 U.S.C. Sec. 1291 (1988).
 
 I.
 FACTS
 
 3
 On August 21, 1990, the Board of Supervisors of Contra Costa County, California, passed Ordinance No. 90-72 that added Division 526 to the County Ordinance Code. The division was entitled "Prevailing Wages for Industrial Construction." Division 526 was subsequently amended on December 4, 1990, and again on December 3, 1991. We refer to Division 526 with its subsequent amendments as the "Ordinance." The Ordinance requires that employers pay "prevailing wages" to their employees on certain types of private industrial construction projects costing over $500,000. The legislative findings and declarations of the Ordinance provide that its purposes are to promote safe construction, minimize the risk of accidents on industrial projects, prevent erosion of the wage scale, and alleviate the burden on the County's health and welfare services and law enforcement, caused by low-paid workers.
 
 
 4
 The prevailing wages are defined as the per diem wages set by the California Department of Industrial Relations in accordance with California Labor Code Secs. 1773 and 1773.1. This section of the California Labor Code sets prevailing wages for public works projects. These per diem wages for California public works projects are ascertained by reference to established collective-bargaining agreements within the locality in which the public work is to be performed. An employer seeking to engage in construction covered by the Ordinance must agree to comply with the terms of the Ordinance and to pay the state-determined prevailing wage for public works before the County will issue a building permit for the private construction project. See Ordinance Secs. 526-2.1002, 2.1008. In addition, the Ordinance provides for other means of enforcement by civil suits for injunctive relief or for unpaid wages by workers who have not been paid the prevailing wages.
 
 
 5
 The Chamber of Commerce of the United States sued Contra Costa County and certain county officials, challenging the validity of the Ordinance. The Northern California and Northern Nevada Pipe Trades District Council # 51 and the Contra Costa Building and Trades Council intervened on behalf of the defendants. On cross-motions for summary judgment, the district court held that the Ordinance was pre-empted by the NLRA and ERISA and violated the Contracts Clauses of the California and United States Constitutions. Associated Builders & Contractors, Golden Gate Chapter, Inc. v. Baca; Chamber of Commerce of the United States v. Bragdon, 769 F.Supp. 1537 (N.D.Cal.1991) (hereinafter "Bragdon ").
 
 
 6
 A group of cities and counties filed an amicus brief in this appeal in support of the position of the Contra Costa County and the Pipe Trades Council. The Merchants and Manufacturers Association of California, the California Business Association, and the Associated General Contractors of California filed an amicus brief in support of the Chamber of Commerce.
 
 
 7
 On appeal, the County argues that the district court erred in holding that the Ordinance was pre-empted by the NLRA and ERISA, and also erred by holding that the Ordinance violated the Contracts Clauses. The County asserts that the prevailing wage requirement is a "minimum labor standard" and a legitimate exercise of the State's police power.
 
 
 8
 The essential facts in this case are undisputed and the summary judgment is based on the district court's conclusion of law, which we review de novo.
 
 II.
 NLRA PRE-EMPTION
 
 9
 "In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue. 'Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 738, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985) (citations omitted). The NLRA has no specific pre-emption provision. Where the pre-emptive effect of federal law is unclear, courts will uphold local regulation unless it "conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." Id. at 747-48, 105 S.Ct. at 2393. The issue in the present case is whether the Ordinance is pre-empted because it frustrates the purpose of the Act.
 
 
 10
 The Supreme Court has recognized two pre-emption doctrines under the NLRA. The first, referred to as Garmon pre-emption, articulated in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), prohibits state regulation that impinges on the regulatory jurisdiction of the National Labor Relations Board ("NLRB") in regulating activities that are protected by Section 7 or constitute an unfair labor practice under Section 8 of the NLRA. The second, known as Machinists pre-emption, prohibits state regulation of conduct that Congress intended to be left to be controlled by the free-play of economic forces. Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 147, 96 S.Ct. 2548, 2556, 49 L.Ed.2d 396 (1976). The Supreme Court has explained that "[w]hen we say that the NLRA pre-empts state law, we mean that the NLRA prevents a State from regulating within the protected zone, whether it be a zone protected and reserved for market freedom, see Machinists, or for NLRB jurisdiction, see Garmon. " Building Trades v. Associated Builders, 507 U.S. ----, ----, 113 S.Ct. 1190, 1196, 122 L.Ed.2d 565, 575-76 (1993). The present case implicates Machinists pre-emption.
 
 III.
 THE MACHINISTS DOCTRINE
 
 11
 The Machinists doctrine was designed to supplement Garmon pre-emption by addressing questions concerning activity that was "neither arguably protected against employer interference by Secs. 7 and 8(a)(1) of the NLRA, nor arguably prohibited as an unfair labor practice by Sec. 8(b) of the Act." Metropolitan Life, 471 U.S. at 749, 105 S.Ct. at 2394. The Court stated that this "second line of pre-emption analysis has been developed in cases focusing upon the crucial inquiry whether Congress intended that the conduct involved be unregulated because 'left to be controlled by the free-play of economic forces.' " Machinists, 427 U.S. at 140, 96 S.Ct. at 2553 (citations omitted). The Court further stated in Machinists that
 
 
 12
 [o]ur decisions ... have made it abundantly clear that state attempts to influence the substantive terms of collective bargaining agreements are as inconsistent with the federal regulatory scheme as are such attempts by the NLRB: Since the federal law operates here, in an area where its authority is paramount, to leave the parties free, the inconsistent application of state law is necessarily outside the power of the State. And indubitably regulation, whether federal or State, of the choice of economic weapons that may be used as part of collective bargaining [exerts] considerable influence upon the substantive terms on which the parties contract.
 
 
 13
 Machinists, 427 U.S. at 153, 96 S.Ct. at 2559 (internal quotations and citations omitted). The particular issue confronted in the Machinists case was a state judgment enforcing a cease and desist order that prevented workers from exerting a concerted peaceful refusal to work overtime as a form of economic pressure in furtherance of their demands. This was held to be pre-empted. The Court held that regulation of the workers' economic weapons was pre-empted because of the regulation's "influence upon the substantive terms on which the parties contract." Id. (emphasis added). It was the State's attempt to influence the substantive terms of collective-bargaining agreements that was held to be inconsistent with the federal regulatory scheme.
 
 
 14
 The Supreme Court in Metropolitan Life made it clear that not all state regulation that affected the substantive terms of labor negotiations was pre-empted by the NLRA. In that case, Massachusetts had enacted a statute that required all general health insurance policies or employee health-care plans that covered hospital and surgical expenses to also include minimum mental health-care benefits. The Court noted
 
 
 15
 [T]here is no suggestion in the legislative history of the Act that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization.... States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety ... are only a few examples.
 
 
 16
 ....
 
 
 17
 Federal labor law in this sense is interstitial, supplementing state laws where compatible and supplanting it only when it prevents the accomplishment of the purposes of the federal Act. Thus the court has recognized that it cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States. When a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act.
 
 
 18
 Metropolitan Life, 471 U.S. at 756-57, 105 S.Ct. at 2397-98 (internal quotations and citations omitted and emphasis added).
 
 
 19
 The Court later upheld as a minimum labor standard that was not pre-empted by the NLRA, a state law requiring a one-time severance payment to employees upon the closing of a plant that employed over 100 workers. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 20-22, 107 S.Ct. 2211, 2222-23, 96 L.Ed.2d 1 (1987). The Court in Fort Halifax confirmed its holding in Metropolitan Life that the NLRA is concerned with insuring an equitable bargaining process. The Court has thus made it clear, as it stated in Metropolitan Life, that "[n]o incompatibility exists, therefore, between federal rules designed to restore the equality of bargaining power, and state or federal legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements, at least so long as the purpose of the state legislation is not incompatible with these general goals of the NLRA." Metropolitan Life, 471 U.S. at 754-55, 105 S.Ct. at 2397 (emphasis added).
 
 
 20
 The essential question in this case is whether the Ordinance is incompatible with the goals of the NLRA. The Court has clearly held that state legislation, which interferes with the economic forces that labor or management can employ in reaching agreements, is pre-empted by the NLRA because of its interference with the bargaining process. See, e.g., Machinists; Golden State Transit Corp. v. Los Angeles, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986).
 
 
 21
 The Court has also clearly held that a state's requirement of "minimal substantive requirements" on contract terms is not such an interference with the bargaining process as to be pre-empted. There is no doubt that imposing substantive requirements does affect the bargaining process. Viewed in the extreme, the substantive requirements could be so restrictive as to virtually dictate the results of the contract. The objective of allowing the bargaining process "to be controlled by the free-play of economic forces" can be frustrated by the imposition of substantive requirements, as well as by the interference with the use of economic weapons. See Barnes v. Stone Container Corp., 942 F.2d 689, 693 (9th Cir.1991); Bechtel Const. v. United Brotherhood of Carpenters, 812 F.2d 1220, 1226 (9th Cir.1987). The question then becomes the extent of the substantive requirements that a state may impose on the bargaining process.
 
 
 22
 The Ordinance here involved does much more than the type of state regulation that has previously been held not preempted. Here, we have a prevailing wage concept, which was developed for use by government entities when they are acting as proprietors and participants in the marketplace, being imposed to regulate the wages paid on private construction projects.
 
 
 23
 The Supreme Court recently crystallized the difference between the government acting as a proprietor and participant in the market place as opposed to the government acting as a regulator. Building Trades v. Associated Builders, --- U.S. ----, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993). The Court noted that a State does not regulate simply by acting within one of the zones protected by the NLRA. "When a State owns and manages property, for example, it must interact with private participants in the market place. In so doing, the State is not subject to pre-emption by the NLRA, because pre-emption doctrines apply only to state regulation." Id. at ----, 113 S.Ct. at 1196, 122 L.Ed.2d at 576. The federal prevailing wage statute enacted by the Davis Bacon Act, 40 U.S.C. Sec. 276(a) et seq., has long been recognized as consistent with the NLRA. Similarly, state prevailing wage laws for public works projects, such as the California Prevailing Wage Statute, have also been recognized as not pre-empted because the State is acting as a proprietor and not a regulator.
 
 
 24
 Thus, those cases relied upon by the appellant, which involve the State acting as a proprietor and participant in the marketplace rather than a regulator, do not pertain to the inquiry before us in this case. Here, the County is definitely acting as a regulator, imposing the substantive requirements of California's prevailing wage law, which applies to public works projects. The question before us, therefore, is whether this prevailing wage concept utilized for public works projects can be imported by a County, acting as a regulator, to establish a minimum wage and benefit package for private construction projects. The California State statute, Cal.Lab.Code Secs. 1773 and 1773.1, does not directly establish the prevailing wages in a particular locality. They are developed pursuant to regulations promulgated by the Director of the Department of Industrial Relations. See California Admin. Code Sec. 16000. The Director uses formulas that average the wages and benefits for each craft pursuant to collective-bargaining agreements applicable in each labor market. Thus, the prevailing wage determined by the Director is not a fixed statutory or regulatory minimum wage, but one derived from the combined collective bargaining of third parties in a particular locality. The wage thus imposed is therefore not the result of the bargaining of those employers and employees actually involved in the selected construction projects in Contra Costa County.[1]
 
 
 25
 The manner in which the Ordinance operates affects not only the total of the wages and benefits to be paid, but also the division of the total package that is paid in hourly wages directly to the worker and the amount paid by the employer in health, pension, and welfare benefits for the worker. The California prevailing wage rate that is set for each craft in a labor market is composed of the average hourly rate paid directly to the workers and the benefits paid for the workers. The Ordinance provides that this total "per diem" rate must be paid directly to the workers with a credit for benefits paid for the workers. However, at least the base hourly rate calculated in California's prevailing wage calculation must be paid directly to the worker. This means that if the employer and the workers have agreed to a total wage and benefit package that is equivalent to the total of the prevailing wage, but allocates more to benefits and less to direct wages, this would not comply with the Ordinance. For example, if the California prevailing wage calculation was
 
 
 26
 Hourly Wages Hourly Benefits Total
 $12. $3. $15.
 
 
 27
 and the contractor's wage scale was
 
 
 28
 Hourly Wages Hourly Benefits Total
 $10. $5. $15.
 
 
 29
 the contractor's wage scale would not comply with the Ordinance. The contractor, to comply, would have to pay an additional $2 in hourly wages for a total per diem rate of $17 or else seek to reduce the benefits to $3 per hour. This would place considerable pressure on the contractor and its employees to revise the labor agreement to reduce the benefit package and increase the hourly wages in order to remain competitive and obtain the contracts and jobs in Contra Costa County.
 
 
 30
 It is clear that this Ordinance affects the bargaining process in a much more invasive and detailed fashion than the isolated statutory provisions of general application approved in Metropolitan Life and Fort Halifax. This is also very different from a minimum wage law, applicable to all employees, guarantying a minimum hourly rate. This Ordinance provides for specific minimum wages and benefits to be paid to each craft and only to those workers who are engaged in the specific construction projects covered by the Ordinance. This is not a wage and benefit package that has been bargained for in any fashion by these construction employers and employees, but rather is a minimum wage and benefit package that is promulgated by the Director of the Department of Industrial Relations of the State of California, and that is developed by averaging the bargains struck by other employers and employees.
 
 IV.
 POLICE POWER
 
 31
 There is no doubt that a state or county has the ability under its police powers to enact laws or ordinances to further the health and safety of its citizens. The question is whether this exercise of police power impinges upon the operation of the NLRA so as to justify pre-emption. This Ordinance differs from the usual exercise of police power, which normally seeks to assure that a minimum wage is paid to all employees within the county to avoid unduly imposing on public services such as welfare or health services. This is also not the type of regulation of general application that assures that certain coverage provisions be included in all health insurance contracts, such as in Metropolitan Life; nor is it the type of regulation seeking to alleviate a particular hardship such as plant closings that affect the employees and the community. This Ordinance, by contrast, sets detailed minimum wage and benefit packages, distinct for each craft involved in certain limited construction projects. This minimum varies from time-to-time as new averages are calculated. The district court noted that unlike the law upheld in Metropolitan Life, the Ordinance is more properly characterized as an example of " 'an interest group deal in public-interest clothing.' " Bragdon, 769 F.Supp. at 1545 (quoting National Solid Wastes Management Ass'n v. Killian, 918 F.2d 671, 688 (7th Cir.1990), aff'd, 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)). Indeed, the public purpose justification is more tenuous. Section 526-2.426 of the Ordinance provides:
 
 
 32
 Adoption. Adoption of this division serves the general welfare of the community because it:
 
 
 33
 (1) promotes safety and higher quality of construction in large industrial projects;
 
 
 34
 (2) maintains and improves the standard of living of construction workers, and thereby improves the economy as a whole; and
 
 
 35
 (3) relieves the burden on public services caused by low-paid and unemployed construction workers.
 
 
 36
 With regard to the first objective, concerning safety and the quality of construction, it should be noted that the Ordinance does not deal directly with those objectives by requiring certain levels of training or experience or by requiring specific levels of monitoring or supervision by the employers. Rather, the furtherance of this objective is dependent entirely upon the concept that higher wages equates to greater safety and higher quality construction.
 
 
 37
 With regard to the second and third objectives, it is true that higher wages improve the standard of living for those construction workers that are employed on these particular jobs and could have some indirect affect to improve the economy. It is difficult to see how the burden on public services by unemployed construction workers would be, in any way, remedied by this Ordinance.
 
 
 38
 The force of the public purpose pronouncements in the Ordinance is somewhat undermined by the waiver clause contained in section 526-2.1602. This clause provides:
 
 
 39
 526-2.1602. Request. Where an applicant believes it is unable to comply with one or more of the requirements of this division and the applicant can demonstrate (1) that the major industrial development would yield overriding economic benefits to the community which equal or exceed the economic benefits to the community from compliance with the requirements of this ordinance, (2) that the applicant would be unable to construct the major industrial development if the provisions of this division were applied to the development and (3) that the major industrial development will be constructed as safely as if the provisions of this division were complied with, the applicant may apply to the community development department for a waiver of one or more of the requirements of this division.
 
 
 40
 We do not decide whether the Ordinance is a legitimate exercise of police power, but proceed under the assumption that it is. The question is whether it can stand or whether it is pre-empted by the NLRA. We do note, however, that the same or similar justifications for the exercise of police power could be advanced for most any business or industry. A precedent allowing this interference with the free-play of economic forces could be easily applied to other businesses or industries in establishing particular minimum wage and benefit packages. This could redirect efforts of employees not to bargain with employers, but instead, to seek to set minimum wage and benefit packages with political bodies. This could invoke defensive action by employers seeking to obtain caps on wages in various businesses or industries. This could be justified as an exercise of police power on community welfare grounds of lowering construction costs to attract business to the area or lowering costs to consumers so as to make products or services more available to the general public. This substitutes the free-play of political forces for the free-play of economic forces that was intended by the NLRA.
 
 V.
 CONCLUSION
 
 41
 The Contra Costa County Ordinance does not seek merely to ensure that contractors on public works projects involving expenditures of County money pay prevailing wages, but goes beyond the parameters of its own public works projects to regulate wholly private construction projects. The Ordinance, therefore, is quite different from established prevailing wage statutes applicable to public works and does not justify the same exemptions from NLRA preemption. Furthermore, this type of minimum labor standard enactment, which is not of general application, but targets particular workers in a particular industry and is developed and revised from the bargaining of others, affects the bargaining process in a way that is incompatible with the general goals of the NLRA.
 
 
 42
 We conclude that the Contra Costa County Ordinance is pre-empted by the NLRA because it is an undue governmental interference with the collective-bargaining processes protected by that Act. Because we find the Ordinance is preempted by the NLRA, we need not decide if it is also preempted by ERISA or violates the contracts clauses of the state or federal constitutions.
 
 
 43
 AFFIRMED.
 
 FLETCHER, Circuit Judge, concurring:
 
 44
 I concur in the result of the majority opinion in the above-entitled case.
 
 
 
 [1]
 Appellants argue for the first time on appeal that a severance provision of the Ordinance would save the Ordinance from pre-emption as to nonunion workplaces. We generally do not consider an argument raised for the first time on appeal and decline to do so in this case. See Mackey v. Pioneer Nat'l Bank, 867 F.2d 520 (9th Cir.1989)