335 F.3d 162
 RONDOUT ELECTRIC, INC., Plaintiff-Appellee,
v.
NYS DEPT. OF LABOR, Linda Angello, Christopher Alund, Dir., Bureau of Public Work, New York State Department of Labor and Eliot L. Spitzer, Attorney General of the State of New York, Defendants-Appellants.
 Docket No. 02-7947.
 United States Court of Appeals, Second Circuit.
 Argued: March 5, 2003.
 Decided: July 15, 2003.
 
 1
 J. Scott Greer, Lewis & Greer, P.C. (Veronica A. McMillan, on the brief), Poughkeepsie, NY, for Plaintiff-Appellee.
 
 
 2
 Seth Kupferberg, Assistant Attorney General, State of New York (Eliot Spitzer, Attorney General; Marion Buchbinder, Assistant Solicitor General; M. Patricia Smith, Assistant Attorney General, on the brief), New York, New York, N.Y. for Defendants-Appellants.
 
 
 3
 Before: JACOBS, POOLER, Circuit Judges, and HALL, District Judge.*
 
 
 4
 HALL, District Judge.
 
 
 5
 Defendants, New York Department of Labor ("DOL"); its Commissioner, Linda Angello; the Director of its Bureau of Public Work, Christopher Alund; and the New York State Attorney General, Eliot Spitzer, appeal from the judgment of the United States District Court for the Southern District of New York (Brieant, J.) granting summary judgment to plaintiff, Rondout Electric Inc. ("Rondout"). The district court held that a DOL annualization regulation, N.Y. Comp.Codes R. & Regs. tit. 12, § 220.2(d)(1) (2002), enacted to implement New York's prevailing wage statute, N.Y. Lab. Law § 220 (2003), was preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169, and thus violates the Supremacy Clause, U.S. Const. art. VI, cl. 2. Rondout contends, and the district court held, that the annualization regulation violates the Machinists doctrine. See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976) [hereinafter Machinists]. Because we find that the State's implementation of the prevailing wage statute through use of an annualization formula is not within the scope of Machinists preemption, we reverse the decision of the district court.
 
 BACKGROUND
 
 6
 Rondout is a New York corporation with its principal place of business in Pough-keepsie, New York. Rondout performs electrical contract work for projects in both the public and private sector. It employs approximately 75 non-union electricians. Approximately 50 percent of Rondout's electrical work is on public work projects, and 50 percent is on private projects.
 
 
 7
 The annualization regulation implements section 220 of the New York Labor Law which was "designed to insure that employees on public works projects were paid wages equivalent to the prevailing rate of similarly employed workers in the locality." Burgio & Campofelice, Inc. v. NYS Dep't of Labor, 107 F.3d 1000, 1003 (2d Cir.1997). The prevailing wage rate is determined annually by the fiscal officer, as defined within the statute, pursuant to section 220(5). N.Y. Lab. Law § 220(5) (2003). Section 220 was designed to implement Article I, section 17 of the New York Constitution, which provides that "[n]o laborer, worker or mechanic in the employ of a contractor or sub-contractor engaged in the performance of any public work ... shall ... be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used." N.Y. Const. art. 1, § 17.
 
 
 8
 As originally enacted, section 220 was silent on the issue of fringe benefits, allowing employers who provided no such benefits to underbid those that did. Burgio, 107 F.3d at 1003. In 1956, the statute was amended to require that all bidders for public work contracts assume the cost of prevailing wage supplements in the locality. Id. (citing N.Y. Lab Law § 220(3)). The prevailing wage rate is now calculated to include not only the hourly cash wages paid to workers, but also to include supplements. HMI Mech. Sys. Inc. v. McGowan, 266 F.3d 142, 145 (2d Cir.2001). "Supplements" are defined as "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not `wages' within the meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay[,] life insurance, and apprenticeship training." N.Y. Lab. Law § 220(5)(b) (2003). This amendment "presumably put[] all bidders on an even footing." Gen. Elec. Co. v. N.Y. State Dep't of Labor, 891 F.2d 25, 28 (2d Cir.1989).
 
 
 9
 The hourly value of supplements is calculated by DOL according to the annualization regulation, which provides:
 
 
 10
 To determine the hourly cash equivalent of any applicable supplement provided to or on behalf of laborers, workers and mechanics employed upon public work projects in accordance with subdivision (a) of this section, the Commissioner of Labor will: (1) divide the actual contribution or cost for providing such supplement by the total annual hours worked on both public and private work, where such proof is provided to the Commission of Labor by the employer ....
 
 
 11
 N.Y. Comp.Codes R. & Regs. tit. 12, § 220.2(d)(1) (2002). Contractors may pay supplements (1) to a fund that pays benefits to the employee, including a qualifying ERISA plan; (2) as a cash payment to the employees in lieu of payment to a benefit plan; or (3) in any combination thereof as long as the total payment is not less than the total prevailing wage supplements. N.Y. Comp.Codes R. & Regs. tit. 12, § 220.2(a) (2002).
 
 
 12
 If it determines that wages or supplements are due, DOL requires that the public entity owing payment to the contractor withhold such payment in an amount sufficient to satisfy the wages and supplements, including interest and any civil penalty that may be assessed pending a final determination. N.Y. Lab. Law § 220-b(2)(a) (2003). After ordering the withholding, DOL commences an investigation and schedules an administrative hearing on the matter. Id. at § 220-b(2)(c).
 
 
 13
 Since January 1, 1996, Rondout has maintained an ERISA Prevailing Wage Pension and Annuity Plan ("Plan") for the benefit of its laborers, workers, and machinists employed on public work projects. For each hour during the plan year that an eligible Rondout employee works on a public work project, Rondout contributes to that Plan an amount equal to the hourly prevailing wage supplement specified by the Commissioner. However, the annualization regulation requires Rondout to pay the supplement in respect of hours worked by its employees on private projects as well as public work projects; this is the purpose of the regulation and the ground on which Rondout argues preemption. Because Rondout pays no supplement for hours worked on private projects, workers receive less than they would under the annualization regulation.
 
 
 14
 Rondout's contribution for the benefit of an individual employee is solely for the benefit of that employee. Each eligible employee has a self-directed, individual account within the Plan, which vests immediately. None of the contributions that Rondout makes to an employee's account within the Plan are used to obtain benefits for individuals other than the eligible employee on whose behalf the payments were made.
 
 
 15
 On December 19, 2000, DOL issued four separate "Notice of Labor Law Inspection Findings" to Rondout, alleging that Rondout had underpaid prevailing wages and supplements to its employees on public work projects. DOL also issued notices to each public agency with which Rondout had a contract to withhold money from its payment pending the outcome of an administrative hearing on the underpayment claims. After DOL scheduled an administrative hearing with respect to its investigations, Rondout filed this action, alleging that the benefits annualization regulation violates federal law. Rondout argues that the formula set forth in the annualization regulation is preempted by the NLRA, 29 U.S.C. § 151 et seq., under the doctrine of Machinists preemption, because, as applied, it impermissibly interferes with the equality of bargaining power between labor and management on both private and public work projects. Rondout argues further that it affects adversely the competitive position of non-union contractors within the private marketplace. The district court granted Rondout's motion for summary judgment, and this appeal followed.
 
 DISCUSSION
 
 16
 A grant of summary judgment is reviewed de novo. Mandell v. County of Suffolk, 316 F.3d 368, 376 (2d Cir.2003). "Summary judgment is appropriate only if it can be established `that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Sheppard v. Beerman, 317 F.3d 351, 354-55 (2d Cir.2003) (internal citations omitted). The material facts in this action are not in dispute.
 
 
 17
 The issue on appeal is whether the annualization regulation is preempted by the NLRA. Pursuant to this regulation, DOL determines the hourly cash equivalent of any applicable supplement paid to workers covered by the law by dividing the annual contribution, or the cost of providing such a supplement, by the total number of hours worked by employees on both public and private work. N.Y. Comp.Codes R. & Regs. tit. 12, § 220.2(d)(1) (2002); HMI, 266 F.3d at 145. In other words, DOL determines a contractor's compliance with the annualization regulation by calculating the hourly cash equivalent of public work supplements that contractors pay by dividing the actual cash value of a contractor's supplement contribution, by the total number of hours employees work annually on both public and private jobs. Id. The annualization regulation is designed to discourage contractors from paying supplements, owed to employees for public work, into an employee benefit plan that also provides benefits to employees for private work, a practice commonly known as "pooling." This practice dilutes the value of the supplements paid into the plan on behalf of the employee for work done on public works. Id. at 146.
 
 
 18
 In HMI, it was argued that "this formula always results in a shortfall in its contributions if an employee performed any private work during the period analyzed." Id. at 151. This court found in HMI that this result "is precisely the desired effect of Section 220, which creates an economic disincentive for employers to use pooled supplement plans." Id. While the plaintiffs in HMI argued that the annualization regulation was preempted by ERISA, an argument we rejected, id., Rondout argues here that the annualization regulation is preempted under the NLRA and Machinists doctrine.
 
 A. NLRA Preemption
 
 19
 The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. State law is preempted explicitly where Congress states an intent to occupy a field and to exclude state regulation. State law is preempted implicitly where the federal interest in the subject matter regulated is so pervasive that no room remains for state action, indicating an implicit intent to occupy the field, or where the state regulation at issue conflicts with federal law or stands as an obstacle to the accomplishment of its objectives. Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203-04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); Sprint Spectrum L.P. v. Mills, 283 F.3d 404, 414-15 (2d Cir.2002) (citing cases). Federal law may preempt state regulation in whole or in part. Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984); Sprint Spectrum, 283 F.3d at 415. Although not a source of a federal right by itself, the Supremacy Clause "`secure[s] federal rights by according them priority whenever they come in conflict with state law.'" Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (alteration in original) (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 613, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (internal quotation marks omitted)).
 
 
 20
 The Supreme Court has recognized that, in enacting the NLRA, Congress manifested an unambiguous intent to supplant some aspects of state law that affect labor relations. Bethlehem Steel Co. v. N.Y. State Labor Relations Bd., 330 U.S. 767, 771-76, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947). "The doctrine of labor law pre-emption concerns the extent to which Congress has placed implicit limits on `the permissible scope of state regulation of activity touching upon labor-management relations.'" N.Y. Tel. Co. v. N.Y. State Dep't of Labor, 440 U.S. 519, 527, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979) (plurality opinion) (quoting Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 187, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978)). However, because the NLRA "leaves much to the states [and] Congress has refrained from [indicating] how much, [courts] must spell out from conflicting indications of congressional will the area in which state action is still permissible." Garner v. Teamsters, Chauffeurs & Helpers Local Union, No. 776, 346 U.S. 485, 488, 74 S.Ct. 161, 98 L.Ed. 228 (1953). "Cases that have held state authority to be pre-empted by federal law tend to fall into one of two categories: (1) those that reflect the concern that `one forum would enjoin, as illegal, conduct which the other forum would find legal' and (2) those that reflect the concern `that the [application of state law by] state courts would restrict the exercise of rights guaranteed by the Federal Acts.'" Machinists, 427 U.S. at 138, 96 S.Ct. 2548 (alteration in original) (quoting UAW v. Russell, 356 U.S. 634, 644, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958)).
 
 
 21
 At issue in this appeal is the second category of preemption,[1] known as Machinists preemption, which focuses on "whether Congress intended that the conduct involved be unregulated because [such conduct was] left `to be controlled by the free play of economic forces.'" Id. at 140, 96 S.Ct. 2548 (quoting NLRB v. Nash-Finch Co., 404 U.S. 138, 144, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971)). States may not "deny[] one party to an economic contest a weapon that Congress meant him to have available." Id. at 150, 96 S.Ct. 2548 (internal quotation omitted). Under Machinists, "States are.... prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes and lockouts, unless such restrictions presumably were contemplated by Congress." Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 614-15, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) (citation omitted). Thus, state action is only preempted if it regulates the use of economic weapons that are recognized and protected under the NLRA such that the state or local government has entered "`into the substantive aspects of the bargaining process to an extent Congress has not countenanced.'" Machinists, 427 U.S. at 149, 96 S.Ct. 2548 (quoting N.L.R.B. v. Ins. Agents' Int'l Union, AFL-CIO, 361 U.S. 477, 498, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960)); see also N.Y. Tel., 440 U.S. at 533, 99 S.Ct. 1328 (plurality opinion). There are two general exceptions to the Machinists doctrine: first, if the state regulation works to establish minimum substantive labor standards that are consistent with the legislative goals of the NLRA, Metropolitan Life Insurance Co. v. Mass., 471 U.S. 724, 757, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and second, if the state is a market participant or proprietor, Bldg. & Const. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc., 507 U.S. 218, 227, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993).
 
 
 22
 1. Minimum Substantive Labor Standards and the Legislative Goals of the NLRA
 
 
 23
 As the Supreme Court made clear in Metropolitan Life, "[t]he framework established in the NLRA was merely a means to allow the parties to reach ... agreement fairly." 471 U.S. at 754, 105 S.Ct. 2380. "The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." Id. at 753, 105 S.Ct. 2380. In Metropolitan Life, the Supreme Court held that "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." Id. at 755, 105 S.Ct. 2380. The Court found that such minimum labor standards have only "the most indirect effect on the right of self-organization established in the Act." Id. "Unlike the NLRA, mandated-benefit laws are not laws designed to encourage or discourage employees in the promotion of their interests collectively; rather, they are in part `designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive' the mandated [benefit]." Id. (emphasis original, internal citations omitted). The Court found that these laws do not even "inadvertently affect the interests implicated in the NLRA." Id.
 
 
 24
 Rondout argues that the annualization regulation in effect injects the State improperly into the bargaining process by dictating the employee supplements that Rondout must pay on private construction projects. Rondout argues that the mere fact that the employer may opt to pay the prevailing supplement in cash instead of into a benefit plan does not alleviate the conflict between the annualization regulation and the Machinists doctrine. A non-union contractor can avoid annualization supplements by paying the public work employee in cash, but to do so, Rondout argues, requires the employer to incur additional social security taxes and higher insurance premiums on the added payroll.[2] Additionally, Rondout argues that the employee must pay payroll taxes on the cash payments, which dilutes the real value of the supplements and deprives the employee of the long-term advantages of a tax-deferred benefit plan.[3] DOL responds that while the cash option may increase the cost of Rondout doing business, the additional costs are insufficient to invoke NLRA preemption.[4]
 
 
 25
 While the annualization regulation may impose an additional cost on non-union employers through indirect taxes on the cash payment option, this increase does not affect the bargaining process that is the subject of the NLRA. As the Supreme Court has held, "the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for `there is nothing in the NLRA.... which expressly forecloses all state regulatory power with respect to those issues ... that may be the subject of collective bargaining.'" Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (alteration in original) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504-05, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978)). Machinists preemption prohibits state regulation of bargaining conduct that Congress intended to be left to the free play of economic forces. Machinists, 427 U.S. at 150-51, 96 S.Ct. 2548. Unlike the NLRA, the annualization regulation is not "designed to encourage or discourage employees in the promotion of their interests collectively." Metro. Life, 471 U.S. at 755, 105 S.Ct. 2380. Without some connection between the prevailing wage supplement and labor/management bargaining, the annualization regulation fails to come within the sphere of Machinists preemption under the NLRA.
 
 
 26
 In support of its argument that the annualization regulation affects the labor/management bargaining process that is protected under the NLRA, Rondout relies on a Ninth Circuit case, Chamber of Commerce v. Bragdon, 64 F.3d 497, 501 (9th Cir.1995). Rondout relies on Bragdon for the proposition that substantive labor requirements can be so restrictive or intrusive that they effectively thrust the state into the private bargaining process and dictate the results of the contract. Bragdon can be easily distinguished from the present case, however. In Bragdon, the Ninth Circuit found a California ordinance that required employers to pay prevailing wages to their employees on certain types of private industrial construction projects costing over $500,000 to be preempted by the NLRA. "Here, we have a prevailing wage concept, which was developed for use by government entities when they are acting as proprietors and participants in the marketplace, being imposed to regulate the wages paid on private construction projects." Id. Unlike the California ordinance, New York's annualization regulation does not require prevailing wages or benefits for any employee who works on a private contract. The only time the prevailing wage standard is imposed is when an employee works on a public project. Having distinguished Bragdon, we have no need to decide whether Bragdon was correctly decided on its own facts.
 
 
 27
 Even if Bragdon were controlling authority, Rondout fails to establish how the annualization regulation would affect the bargaining process itself. Although the tax implications may have an indirect economic impact on the bidding process,[5] it does not bind an employer or employee to a particular choice or eliminate particular bargaining tools. Thus, it is not preempted under the Machinists doctrine. In New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 659, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Supreme Court examined a similar, indirect economic impact in a case involving alleged preemption under ERISA. In that case, the Court stated that:
 
 
 28
 [a]n indirect economic influence, however, does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself.... It simply bears on the costs of benefits and the relative costs of competing insurance to provide them. It is an influence that can affect a plan's shopping decisions, but it does not affect the fact that any plan will shop for the best deal it can get, surcharges or no surcharges.
 
 
 29
 Id. at 659-60, 115 S.Ct. 1671. Likewise, in this case, the additional taxes on the cash payment option may factor into the business decision of the non-union employer when taking a public job. However, employees remain free to negotiate contracts under which they never work on public work projects, or only do so on the condition that they receive their supplement in benefits, thus avoiding the additional payroll tax. Employers remain free to require employees to take the cash supplement, thereby avoiding the pooling disincentive. Nothing in the regulation imposes a specific choice on either the employer and employee. Thus, the annualization regulation does not fall within the scope of the NLRA and is not preempted by it.[6]
 
 CONCLUSION
 
 30
 For the foregoing reasons, the decision of the district court is reversed. The case is remanded for entry of summary judgment in favor of the appellants.
 
 
 
 Notes:
 
 
 *
 The Honorable Janet C. Hall of the United States Court for the District of Connecticut, sitting by designation
 
 
 [1]
 The first category of preemption developed from a line of cases that focused on the primary jurisdiction of the National Labor Relations Board ("NLRB")San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-47, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Garmon and its progeny hold that the NLRA preempts state regulation that either prohibits conduct subject to the regulatory jurisdiction of the NLRB under section 8 of the NLRA or facilitates conduct prohibited by section 7 of the NLRA. Id.; Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 290-91, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).
 In this case, Rondout does not claim that the annualization regulation or the defendants' actions prohibit conduct subject to the regulatory jurisdiction of the NLRB under section 8 of the NLRA or facilitate conduct prohibited by section 7 of the NLRA. Thus, Garmon preemption does not apply here.
 
 
 [2]
 "[F]or every dollar in payroll, Rondout must pay an additional 7.65% F.I.C.A., 7% in workers' compensation insurance, and 2.7% in general liability insurance. Thus, the actual cost to Rondout is approximately $1.17 for every cash dollar that Rondout pays its employees for prevailing wage supplements." Affidavit of Wilbur Whitman, President of Rondout, ¶ 131
 
 
 [3]
 "In addition our employees are required to pay 7.65% in F.I.C.A. for each dollar that the employees receive in cash, thereby reducing the cash value of the prevailing wage supplement to approximately $0.92 on the dollar." Affidavit of Wilbur Whitman, President of Rondout,see supra note 2.
 
 
 [4]
 DOL also disputes the amount of these additional costs as calculated by Rondout, see n. 2 and 3,supra, arguing that these costs are significantly lower than Rondout suggests.
 
 
 [5]
 The State concedes that "a contractor using the cash option could litigate a claim that it should receive credit for such [additional] costs before the DOL or in state court." Appellants' Brief at 20
 
 
 [6]
 Because we have found that the annualization regulation works to establish minimum substantive labor standards that are consistent with the legitimate goals of the NLRA, the court need not address the "market participant" exception to preemption