FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 23 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AMERICAN HOTEL AND LODGING
ASSOCIATION; ASIAN AMERICAN
HOTEL OWNERS ASSOCIATION,

    Plaintiffs - Appellants,

 v.

CITY OF LOS ANGELES,

    Defendant - Appellee,

 and

UNITE HERE LOCAL 11,

    Intervenor-Defendant –
Appellee.

No.   15-55909

D.C. No.
2:14-cv-09603-AB-SS

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted February 1, 2016
Pasadena, California

Before: Harry Pregerson, Kim McLane Wardlaw, and Andrew D. Hurwitz, Circuit
Judges.

Opinion by Judge Pregerson, Senior Circuit Judge:

The American Hotel & Lodging Association and Asian American Hotel Owners Association ("the Hotels") appeal the denial of their motion to preliminarily enjoin the City of Los Angeles ("the City") from enforcing the Citywide Hotel Worker Minimum Wage Ordinance ("the Wage Ordinance"). The Hotels argue that the entire Wage Ordinance is preempted by federal labor law, referred to as *Machinists* preemption, because the Ordinance interferes with labor–management relations. The Hotels also argue that the opt-out provision for collective bargaining agreements is independently preempted.

The district court concluded that preemption was inapplicable and denied the Hotels' motion for preliminary injunctive relief. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I.  Background

At issue in this case is the Citywide Hotel Worker Minimum Wage Ordinance ("the Wage Ordinance"), adopted by the Los Angeles City Council on October 1, 2014. The Wage Ordinance provides, among other provisions, an increased minimum wage for workers at select hotels—large hotels citywide with more than 150 rooms and some smaller hotels near the Los Angeles International airport ("LAX") that are already covered by another wage ordinance. An opt-out provision allows hotels covered by a collective bargaining agreement to waive the requirements of the Ordinance, and a hardship waiver allows those hotels whose

2

viability might be threatened by the Ordinance to postpone implementation for one year.

## A. *Earlier Wage-Related Ordinances*

The Wage Ordinance and its specific provisions follow a long history of minimum-wage ordinances that have been adopted by the City of Los Angeles ("the City") and subsequently contested by employers.

In 1997, the City adopted one of the country's first "living wage" ordinances ("Airport LWO"), mandating increased minimum wages and compensated time off for airport workers and certain contract employees working near LAX. *See* L.A. Admin. Code §§ 10.37 *et seq*. The Airport LWO contains a heightened minimum wage (a total cash minimum wage of $15.37 per hour as of 2013) and an opt-out for workers covered by collective bargaining agreements. In 2012, an LAX contractor sued the City, asserting that the Airport LWO was preempted by federal law, including the Railway Labor Act. The district court rejected the plaintiff's preemption theory and granted summary judgment for the City, *Calop Bus. Sys., Inc. v. City of Los Angeles*, 984 F. Supp. 2d 981 (C.D. Cal. 2013), and we affirmed, *Calop Bus. Sys., Inc. v. City of Los Angeles*, 614 F. App'x 867, 870 (9th Cir. 2015) ("The Act does not preempt state and local laws that, like the [Airport] LWO, impose minimum substantive requirements while permitting employers and unions to bargain around them.").

In 2006 and 2007, the City adopted two ordinances to regulate wages at hotels near LAX. The City had determined that hotel customers—believing that workers already received a portion of the "service charges" added to their bills—reduced or eliminated tips to hotel workers. In 2006, the City adopted the Hotel Service Charge Reform Ordinance ("Service Charge Ordinance"), Ordinance No. 178084, which required hotels to pass along service charges to the employees who rendered the actual services.

In 2007, the City passed the Airport Hospitality Enhancement Zone Ordinance ("AHEZ Ordinance"), Ordinance No. 178432, to provide a living wage for employees of hotels with 50 or more rooms in the LAX area. The AHEZ Ordinance contains a heightened minimum wage (a total cash minimum wage of $12.28 per hour as of 2014), provides an opt-out for hotels covered by a collective bargaining agreement, and contains a hardship waiver for hotel employers. In 2008, the AHEZ Ordinance was challenged by an airport hotel, which argued that the ordinance was preempted by the National Labor Relations Act ("NLRA"). The district court disagreed, noting that "the employer will have the opportunity to negotiate a collective bargaining agreement whose rates could be higher or lower than the living wage." *Fortuna Enters., L.P. v. City of Los Angeles*, 673 F. Supp. 2d 1000, 1010 (C.D. Cal. 2008). The subsequent appeal was voluntarily dismissed.

B. *The Present Wage Ordinance*

4

Finding that the AHEZ Ordinance "has resulted in higher pay and real benefits for low-income families, and the hotels around LAX have thrived," the City sought to extend the benefits of increased minimum wages to large hotels citywide. Before reaching a decision, the City received input from economists and consultants; the public; advocacy organizations such as the Los Angeles Alliance for a New Economy ("LAANE"); and Appellee-in-Intervention, UNITE HERE Local 11 ("Local 11").[1] Based on this input, the City Council passed the Wage Ordinance on October 1, 2014, extending a "fair wage" of $15.37 to hotels with 150 or more rooms, which the Council determined were in a better position to absorb the cost of paying a living wage without layoffs.[2] The Wage Ordinance also replaces the 2007 AHEZ Ordinance governing hotels with 50 or more rooms close to LAX.

The official purpose of the Wage Ordinance is to promote "an employment environment that protects government resources," and "the health, safety and welfare of thousands of hotel workers by ensuring they receive decent compensation for the work they perform." Indeed, Los Angeles hotel workers are among the lowest paid in the nation. To achieve these goals, the final ordinance includes the following provisions:

---

[1] Local 11, affiliated with LAANE, is currently the only union representative for hotel workers in Los Angeles.

[2] An hourly rate of $15.37 equates to an annual salary close to $32,000.

- *Minimum Wage*: Minimum wages of $15.37 per hour for workers at covered hotels (exclusive of gratuities, service charge distributions, and bonuses), with staggered implementation (beginning first for hotels with 300 rooms or more and subsequently for hotels with 150 or more);
- *Compensated Time and Sick Leave*: 96 hours of compensated time off and an additional 80 hours of uncompensated sick leave for full-time hotel workers;
- *Service-Charge Pass-Through*: A requirement that service charges be distributed to the non-supervisory workers who provide the service to the customer;
- *Enforcement*: A private cause of action for back pay, attorneys' fees, and treble damages for willful violations;
- *Exemption for Collective Bargaining Agreements*: An opt-out for workers covered by a bona fide, non-expired collective bargaining agreement, if the waiver is set forth in that agreement in clear and unambiguous terms. (No exemptions are available for terms unilaterally implemented by the parties.)
- *One-Year Hardship Waiver*: A one-year waiver available to employers if necessary to avoid bankruptcy, shutdown, reduction in workforce by more than 20 percent, or reduction in workers' total hours by more than 30 percent.

Many of these provisions are identical to those in previous City ordinances that have been upheld by the courts.[3]

## C. *Procedural History*

On December 16, 2014, a few months after the Wage Ordinance was adopted, American Hotel & Lodging Association and Asian American Hotel Owners Association ("the Hotels") sued the City,[4] arguing that "[u]nder the guise

---

[3] For example, the collective bargaining agreement exemption, is identical to that in the Airport LWO; the Service Charge Ordinance; and the AHEZ Ordinance. Likewise, the language for the one-year hardship waiver, closely matches the language used in the AHEZ Ordinance.

[4] Local 11 was granted status as Intervenor-Defendant on March 25, 2015.

of an ordinance purporting to require that a 'fair wage' be paid to hotel workers, the City has constructed . . . an insidious mechanism that improperly aids the Hotel Workers' Union . . . in its efforts to organize employees." On January 26, 2015, the Hotels filed a motion for preliminary injunction, arguing that the Wage Ordinance is preempted by federal labor law (so-called *Machinists* preemption) because it interferes with labor–management relations. On May 13, 2015, District Court Judge André Birotte, Jr., denied the Hotels' motion for a preliminary injunction, holding that the Hotels had failed to show a likelihood of success on the merits. The Hotels timely appealed.

## II. Standard of Review

Denial of a preliminary injunction is reviewed for abuse of discretion. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A district court abuses its discretion if its analysis is premised on an inaccurate view of the law. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014). In such instances, the court reviews *de novo* the legal premises underlying the preliminary injunction. *Id.*

## III. Discussion

A. *The Wage Ordinance Is a Minimum Labor Standard That Is Not Preempted by the National Labor Relations Act*

1. States cannot regulate the mechanics of collective bargaining but may set minimum labor standards

7

The NLRA—the federal architecture that governs relations between labor and management, for example, union organizing, collective bargaining, and conduct of labor disputes—has no express preemption provision. *See* 29 U.S.C. §§ 151–169; *Chamber of Commerce v. Brown*, 554 U.S. 60, 65 (2008). Nonetheless, the Supreme Court has recognized two implicit preemption mandates: *Garmon* preemption and *Machinists* preemption. *Brown*, 554 U.S. at 65. *Garmon* preemption, not at issue in this case, forbids states from regulating activity that Congress (arguably) expected the NLRA to protect or prohibit. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).

Under *Machinists* preemption, at issue here, the NLRA prohibits states from restricting a "weapon of self-help," such as a strike or lock-out. *Int'l Ass'n of Machinists v. Wis. Emp't Relations Comm'n* ("*Machinists*"), 427 U.S. 132, 146 (1976) (internal quotations omitted). Congress left these self-help tools unregulated to allow tactical bargaining decisions "to be controlled by the free play of economic forces." *Id.* at 140 (internal quotations omitted). In *Machinists*, a union refused to work overtime. When Wisconsin attempted to enforce a cease and desist order, the Supreme Court held the order preempted. *Id.* at 155. By interfering with the union's bargaining tactic, Wisconsin interfered with "activity which must be free of regulation by the States if the congressional intent in enacting the comprehensive federal law of labor relations is not to be frustrated." *Id.*

8

Minimum labor standards, such as minimum wages, are not subject to *Machinists* preemption. *Metro. Life Ins. Co. v. Massachusetts* ("*Metropolitan Life*"), 471 U.S. 724, 755 (1985). Such minimum labor standards affect union and nonunion employees equally, neither encouraging nor discouraging the collective bargaining processes covered by the NLRA. *Id.* Minimum labor standards do technically interfere with labor–management relations and may impact labor or management unequally, much in the same way that California's at-will employment may favor employers over employees. Nevertheless, these standards are not preempted, because they do not "regulate the mechanics of labor dispute resolution." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 86 (2d Cir. 2015). Rather, these standards merely provide the "backdrop" for negotiations. *Metropolitan Life*, 471 U.S. at 757 (internal quotations omitted). Such standards are a valid exercise of states' police power to protect workers. *Fort Halifax Packing Co. v. Coyne* ("*Fort Halifax*"), 482 U.S. 1, 21–22 (1987).

The Supreme Court clarified the distinction between nonpreempted employment standards and preempted regulation of the collective bargaining process in *Metropolitan Life* and *Fort Halifax*. In *Metropolitan Life*, the Court was faced with a Massachusetts law requiring general insurance policies and health care plans to provide specific mental-health care benefits. 471 U.S. at 727. The employer argued that the requirement was preempted because it imposed a contract

9

term that otherwise would be the subject of collective bargaining. *Id.* at 733. The Court was not persuaded. It held that "Massachusetts' mandated-benefit law is an insurance regulation designed to implement the Commonwealth's policy on mental-health care, and as such is a valid and unexceptional exercise of the Commonwealth's police power." *Id.* at 758. The Court determined that the mandated-benefit law, "like many laws affecting terms of employment, potentially limits an employee's right to choose one thing by requiring that he be provided with something else, [but] *it does not limit the rights of self-organization or collective bargaining* protected by the NLRA, and is not preempted by that Act." *Id.* (emphasis added).

In *Fort Halifax*, the Court reiterated the distinction between minimum labor standards and laws that intrude into the process of collective bargaining. 482 U.S. at 19–22. The Court was faced with a Maine law that required employers to provide a one-time severance payment to employees affected by plant closures, unless the employment contract dealt with severance pay. *Id.* at 1. When the employer argued that the law was preempted because it intruded into the collective bargaining process, the Court underscored the critical role of the state in regulating employment conditions:

> It is true that the Maine statute gives employees something for which they otherwise might have to bargain. That is true, however, with regard to any state law that substantively regulates employment conditions. Both employers and employees come to the bargaining table with rights

10

> under state law that form a "backdrop" for their negotiations. Absent a collective bargaining agreement, for instance, state common law generally permits an employer to run the workplace as it wishes. The employer enjoys this authority without having to bargain for it.

*Id.* at 21 (internal citation omitted). In other words, minimum labor standards set the stage for labor–management engagement. *See also Livadas v. Bradshaw*, 512 U.S. 107, 132 & n.26 (1994) (noting that "familiar and narrowly drawn opt-out provisions" for collective bargaining agreements are valid because they do not impact rights to collective bargaining).

As *Metropolitan Life* and *Fort Halifax* clarify, state action that intrudes on the mechanics of collective bargaining is preempted, but state action that sets the stage for such bargaining is not. Compare *Metropolitan Life* and *Fort Halifax* with, for example, *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 618 (1986) (preempting renewal of a taxicab franchise because it was conditioned on the settlement of a strike), *Brown*, 554 U.S. at 68 (preempting state provisions prohibiting employers from using funds "to assist, promote or deter union organizing" because of the "explicit direction from Congress to leave [such] noncoercive speech unregulated"), and even *Machinists* itself, 427 U.S. at 155 (preempting an order requiring union workers to work overtime). It is no surprise, then, that "state minimum benefit protections have repeatedly survived *Machinists* preemption challenges," because they do not alter the process of collective bargaining. *Assoc'd Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979,

11

989 (9th Cir. 2004), *as amended*, No. 02-56735, 2004 WL 292128 (9th Cir. Feb. 17, 2004) (internal quotations omitted).

2.      The Wage Ordinance is a minimum labor standard that is not preempted by federal labor law

The district court did not err in finding the Wage Ordinance to be the kind of minimum labor standard that falls within the ambit of state power. By providing a basic minimum wage and time-off compensation, the Wage Ordinance alters the backdrop of negotiations, not the mechanics of collective bargaining. Its many provisions, including the opt-out for collective bargaining (*see* Section B below), are valid. As such, the Wage Ordinance is not preempted.[5]

B. *The Exemption for Collective*
*Bargaining Agreements Does Not Warrant Preemption*

---

[5] The Hotels argue that *Bragdon* should govern the preemption analysis. *See Chamber of Commerce v. Bragdon*, 64 F.3d 497, 501 (9th Cir. 1995) ("Viewed in the extreme, the substantive requirements could be so restrictive as to virtually dictate the results of the contract."). In *Bragdon*, we struck down a county ordinance requiring employers to pay "prevailing wages" on private construction projects costing over $500,000. *Id.* at 498. The prevailing wages were defined as the per diem wages set by the state for public works projects, which in turn were based on the wages in local collective bargaining agreements, effectively forcing nonunion employers to pay what amounted to a union wage. *Id.* at 498–99, 502–03. As such, we held that this ordinance interfered with the collective bargaining process governed by the NLRA. *Id.* at 504. As we noted in *Nunn*, "[i]n invalidating [the] *prevailing* wage ordinance [in *Bragdon*], we carefully distinguished, for purposes of preemption, state established *minimum* wage regulations, which we acknowledged to be lawful." 356 F.3d at 991 n.8. The Wage Ordinance before us is like the minimum wage upheld in *Nunn*, not the prevailing wage struck down in *Bragdon*.

12

The Hotels also argue that the Wage Ordinance's opt-out provision for collective bargaining independently warrants preemption. The Supreme Court has made clear, however, that the NLRA "cast[s] no shadow on the validity of these familiar and narrowly drawn opt-out provisions." *Livadas*, 512 U.S. at 132; *see also id.* at 132 n.26 ("Nor does it seem plausible to suggest that Congress meant to preempt such opt-out laws as 'burdening' the statutory right of employees not to join unions by denying nonrepresented employees the 'benefit' of being able to 'contract out' of such standards.").[6]

## IV. Conclusion

---

[6] The Hotels also contend that the opt-out for collective bargaining is preempted because employers cannot unilaterally implement terms and conditions of employment—and still be eligible for a waiver—once a collective bargaining agreement has expired. Once a collective bargaining agreement expires, the Wage Ordinance controls, and the employer is required to comply with the Wage Ordinance; the employer cannot unilaterally reinstate the terms of the expired agreement. The Wage Ordinance, in effect, has changed the bargaining conditions. The Hotels argue that such interference in labor–management relations after the collective bargaining agreement has expired warrants preemption.

We have previously rejected this argument. *See Nat'l Broad. Co. v. Bradshaw*, 70 F.3d 69, 72 (9th Cir. 1995) *as amended on denial of reh'g*, No. 92-56178, 1995 WL 708163 (9th Cir. Dec. 4, 1995). In *National Broadcasting*, an employer brought a *Machinists* challenge to a state overtime law that exempted employers covered by collective bargaining agreements. 70 F.3d at 69-70. The employer argued that its ability to bargain was limited after an agreement expired because it was forced to pay state minimum wages or negotiate a retroactive overtime provision. *Id.* at 72. This court held that these effects were "without consequence in federal labor law." *Id.* Relying on *Fort Halifax*, the court noted that minimum labor standards always form the "backdrop" of negotiations and so default to this backdrop was not grounds for preemption. *Id.*

The district court did not abuse its discretion by denying the Hotels' motion for a preliminary injunction to stop enforcement of the City's Wage Ordinance, because the Hotels failed to show a likelihood of success on the merits. We have consistently held that minimum labor standards do not implicate *Machinists* preemption. The Wage Ordinance is no different.

**AFFIRMED.**

## COUNSEL LISTING

Michael Starr (argued) and Katherine Healy Marques, Holland & Knight LLP, New York, New York; Kristina S. Azlin and John A. Canale, Holland & Knight LLP, Los Angeles, California; for Plaintiffs-Appellants.

Sara Ugaz (argued), Ronald S. Whitaker, Thomas H. Peters, and James P. Clark, Deputy City Attorneys; Michael N. Feuer, City Attorney; Office of the Los Angeles City Attorney, Los Angeles, California; for Defendant-Appellee.

Paul L. More (argued), Yuval Miller, Andrew J. Kahn, and Richard G. McCracken; Davis, Cowell & Bowe, LLP, San Francisco, California; for Intervenor-Defendant-Appellee.

H. Christopher Bartolomucci and D. Zachary Hudson, Bancroft PLLC, Washington, D.C., for Amici Curiae Chamber of Commerce of the United States of America and Coalition for a Democratic Workplace.