# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2017

Argued: September 26, 2018
Decided: December 12, 2018

Docket No. 17-1849-cv (L)
Docket No. 17-3476-cv (XAP)

ASSOCIATION OF CAR WASH OWNERS INC., ZOOM CAR SPA, LLC, and FIVE STAR HAND WASH LLC,

*Plaintiffs-Appellees-Cross-Appellants,*

*v.*

CITY OF NEW YORK and LORELEI SALAS, in her official capacity as Commissioner of the New York City Department of Consumer Affairs,

*Defendants-Appellants-Cross-Appellees.*

Appeal from the United States District Court
for the Southern District of New York
No. 15-cv-8157, Hellerstein, *Judge*.

Before:      HALL and LYNCH, *Circuit Judges*, and KUNTZ, *District Judge*.[*]

---

[*]      Judge William F. Kuntz, II, of the United States District Court for the Eastern District of New York, sitting by designation.

17-1849 (L)
Assoc. of Car Wash Owners Inc. et al. v. City of New York

On appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *J.*) holding the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, preempts a two-tiered surety bond provision contained in New York City Local Law 62 for the Year 2015, entitled the Car Wash Accountability Law, codified at N.Y.C. Admin. Code §§ 20-539 through 20-546, 24-529 (the "Car Wash Law"). That provision, as relevant here, reduces the required bond amount when an applicant seeking a license to operate a car wash in New York City is a party to a collective bargaining agreement providing certain protections. The district court initially struck down the entire law, but in an amended order, the district court severed section 20-542(b)(1)—the subdivision at issue in this appeal—from the remainder of the law. Because we conclude the district court erred in granting summary judgment on federal preemption prior to the completion of discovery, we vacate the district court's order and remand the case so the parties may take discovery.

VACATED AND REMANDED.

> JOHN S. SUMMERS (Rebecca S. Melley, Andrew M. Erdlen, *on the brief*), Hangley Aronchick Segal Pudlin & Schiller, Philadelphia, PA, and Michael A. Cardozo, Proskauer Rose LLP, New York, NY, *for Plaintiffs-Appellees-Cross-Appellants* Association of Car Wash Owners Inc., Zoom Car Spa, LLC, and Five Star Hand Wash LLC.
>
> INGRID R. GUSTAFSON (Richard Dearing, *on the brief*), on behalf of Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellants-Cross-Appellees* City of New York and Lorelei Salas, in her official capacity as Commissioner of the New York City Department of Consumer Affairs.

William F. Kuntz, II, *District Judge*:

This appeal calls on us to consider whether the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, preempts New York City Local Law 62 for the Year 2015, entitled the Car Wash Accountability Law, codified at N.Y.C. Admin. Code §§ 20-539 through 20-529 (the "Car Wash Law"). In June 2015, the New York City Council voted to adopt the law and Mayor Bill de Blasio signed it into law. The Car Wash Law requires car washes to obtain a

2

license before operating in the City and sets forth certain requirements for acquiring a license. Among the law's provisions is a two-tiered surety bond provision which, as relevant here, reduces the required bond amount from $150,000 to $30,000 if the car wash applying for issuance or renewal of a license "is a party to a current and bona fide collective bargaining agreement . . . that expressly provides for the timely payment of wages and an expeditious process to resolve disputes concerning nonpayment or underpayment of wages." N.Y.C. Admin. Code § 20-542(b)(1). The Association of Car Wash Owners Inc. and two of its individual members, Zoom Car Spa, LLC and Five Star Hand Wash LLC (collectively, "Plaintiffs") subsequently filed suit in the United States District Court for the Southern District of New York against the City of New York (the "City") and Lorelei Salas in her official capacity as Commissioner of the New York City Department of Consumer Affairs (collectively, "Defendants") alleging, *inter alia*, the surety bond provision favors unionization and is preempted by the NLRA.

The district court (Alvin K. Hellerstein, *J.*) agreed with the Plaintiffs and granted their motion for summary judgment regarding federal preemption, holding the NLRA preempts section 20-542(b)(1) of the law. Although the district court initially struck down the entire law, following motions for reconsideration, the district court severed only the subdivision at issue— section 20-542(b)(1)—from the remainder of the law. Because we find the district court erred in granting summary judgment for the Plaintiffs on their federal preemption claim before discovery, we vacate the district court's order and remand for further proceedings.

## BACKGROUND

In light of concerns regarding the lack of regulatory oversight of the car wash industry and its history of underpayment of wages, unsafe practices, and environmental issues, among

other problems, the New York City Council voted to adopt the Car Wash Law on June 10, 2015.

A1024.  On June 29, 2015, Mayor Bill de Blasio signed it into law.  A1121-22.  The law makes

it unlawful for a car wash to operate in New York City without a license.  N.Y.C. Admin. Code §

20-541(a).  To obtain a license, an applicant must certify that it is in compliance with certain

environmental rules and has no outstanding warrants or judgments; must file certificates of

insurance for workers' compensation, unemployment insurance, and disability insurance

coverage; and must file proof of liability insurance coverage, among other requirements.  *Id*. §

20-541(d).  In addition, an applicant must furnish proof of compliance with the surety bond

provision set forth in section 20-542 of the law.  *Id*. § 20-541(d)(2).  The law also contains a

severability clause.  *See id*. § 20-539.

The surety bond provision, in turn, requires that applicants for a license "furnish to the

commissioner [of Consumer Affairs] a surety bond in the sum of one hundred fifty thousand

dollars, payable to the city of New York and approved as to form by the commissioner."  *Id*. §

20-542(a).  There are two circumstances in which a reduced bond amount of $30,000 applies.

The first situation, and the subject of this appeal, is when the applicant "is a party to a current

and bona fide collective bargaining agreement, with a collective bargaining representative of its

employees, that expressly provides for the timely payment of wages and an expeditious process

to resolve disputes concerning nonpayment or underpayment of wages."  *Id*. § 20-542(b)(1).  The

second circumstance is when the applicant "is covered by an active monitoring agreement

pursuant to a settlement supervised by the office of the attorney general of the United States or

the state of New York, or the department of labor of the United States or the state of New York,

or other government agency with jurisdiction over wage payment issues," and the active

monitoring agreement "expressly provides for the timely payment of wages at or above the

4

applicable minimum wage rate," "requires that the employer be subjected to at least monthly monitoring by an independent monitor appointed," and "provides for an expeditious process to resolve disputes concerning wage violations without the expense of litigation, including reasonable mechanisms to secure the assets necessary to cover any judgment or arbitration award." *Id*. § 20-542(b)(2). The surety bond must be available to satisfy any fine, penalty, or obligation to the City, final judgments obtained by customers who sustained damages, and final judgments obtained by employees for nonpayment or underpayment of wages. *Id*. § 20-542(c)(1)-(3).

On October 16, 2015, the Plaintiffs filed their initial complaint. A6. On October 19, 2015, the Plaintiffs filed their first motion for partial summary judgment arguing that the Car Wash Law is preempted and invalid. A6, A24-25. In a stipulation so-ordered by the district court on November 3, 2015, the parties agreed that the time for the Plaintiffs to file an amended complaint and/or an amended/superseding motion be extended until four weeks after the Department of Consumer Affairs ("DCA") published final rules implementing the Car Wash Law. A27-28. The parties also agreed the Defendants would not implement the law and associated rules until resolution of the Plaintiffs' motion. A28. After the DCA published the contemplated final rules, the district court so-ordered a stipulation on October 23, 2016 setting a schedule for the filing of an amended complaint and/or amended/superseding motion and opposition thereto, A31-32, which was subsequently revised several times.

On October 26, 2016, the Plaintiffs filed an amended complaint alleging federal and state law preemption, denial of equal protection, violation of due process, a claim pursuant to 42 U.S.C. § 1983, and arbitrary and capricious action in violation of New York state law. A35-57. On February 21, 2017, the Plaintiffs filed an amended motion for partial summary judgment on

their federal and state law preemption claims, A93-94, and the Defendants filed a motion for judgment on the pleadings seeking to dismiss the amended complaint in its entirety, A145-46.  In an amended order dated June 20, 2017, the district court (i) held the NLRA preempts section 20-542(b)(1) of the Car Wash Law; (ii) dismissed with prejudice the Plaintiffs' equal protection, due process, and section 1983 claims; and (iii) declined to exercise supplemental jurisdiction over the Plaintiffs' state law claims.  SPA2-12.  The district court initially declared the entire Car Wash Law invalid.  SPA12.  Both sides filed motions for reconsideration.  In an order dated August 31, 2017, the district court granted the Defendants' motion to sever section 20-542(b)(1) from the remainder of the law and granted the Plaintiffs' motion, which the district court construed as a motion to reinstate the Plaintiffs' section 1983 claim.  SPA30-36.  In an order dated September 26, 2017, the district court denied the Plaintiffs' second motion for reconsideration.  SPA38.

Both sides appeal.  A1828-29, A1831-32.  The Defendants appeal the district court's order granting the Plaintiffs' motion for partial summary judgment on federal preemption and denying the Defendants' corresponding motion for judgment on the pleadings.  The Plaintiffs argue the district court correctly decided the federal preemption question but appeal the district court's judgment severing only section 20-542(b)(1) from the remainder of the law.  In response, the Defendants argue that to the extent this Court agrees with the district court's federal preemption holding, the district court properly severed only section 20-542(b)(1).

## DISCUSSION

"We review *de novo* the award of summary judgment, 'constru[ing] the evidence in the light most favorable to the [nonmoving party]' and 'drawing all reasonable inferences and resolving all ambiguities in [its] favor.'"  *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017)).  "Summary judgment is appropriate

only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(a)). Similarly, we review the district court's denial of a motion for judgment on the pleadings *de novo*, "accepting the allegations in the amended complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Patel v. Searles*, 305 F.3d 130, 134-35 (2d Cir. 2002) (citations omitted); *see Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

## I.    NLRA Preemption

"The NLRA does not contain an express preemption provision. Instead, '[t]he doctrine of labor law pre-emption concerns the extent to which Congress has placed *implicit* limits on the permissible scope of state regulation of activity touching upon labor-management relations.'" *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 84 (2d Cir. 2015) (quoting *N.Y. Tel. Co. v. N.Y. State Dep't of Labor*, 440 U.S. 519, 527 (1979)). Two different doctrines of NLRA preemption have emerged. The first category—known as *Garmon* preemption after the Supreme Court's decision in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)— "hold[s] that the NLRA preempts state regulation that either prohibits conduct subject to the regulatory jurisdiction of the [National Labor Relations Board] under section 8 of the NLRA or facilitates conduct prohibited by section 7 of the NLRA." *Rondout Elec., Inc. v. N.Y. State Dep't of Labor*, 335 F.3d 162, 167 n.1 (2d Cir. 2003) (citing *Garmon*, 359 U.S. at 244-47); *see Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 95 (2d Cir. 2006) ("[T]he *Garmon* rule can be stated quite elegantly: 'States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.'" (quoting *Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986)).

It is the second category of NLRA preemption, known as *Machinists* preemption, with which we are concerned in this appeal. Stated broadly, *Machinists* preemption "forbids states and localities from intruding upon 'the [labor-management] bargaining process.'" *Concerned Home Care Providers*, 783 F.3d at 84 (quoting *Lodge 76 Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 149 (1976)). *Machinists* preemption "rel[ies] on the understanding that in providing in the NLRA a framework for self-organization and collective bargaining, Congress determined both how much the conduct of unions and employers should be regulated, and how much it should be left unregulated." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 751 (1985). Under this theory of NLRA preemption, the crucial inquiry is "whether Congress intended that the conduct involved be unregulated because [such conduct was] left to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140 (quotation marks, citation, and footnote omitted); *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 614 (1986) ("[*Machinists* preemption] precludes state and municipal regulation concerning conduct that Congress intended to be unregulated." (quotation marks, citation, and footnote omitted)).

As this Court has explained, "[s]ections 7 and 8 of the NLRA guarantee employees the right to organize and engage in other forms of protected concerted action, and identify forms of unfair labor practices. The remaining aspects of the bargaining process are left 'to be controlled by the free play of economic forces.'" *Concerned Home Care Providers*, 783 F.3d at 84 (citing 29 U.S.C. §§ 157, 158(a)-(b) and quoting *Machinists*, 427 U.S. at 140). "Under [*Machinists* preemption], even regulation that does not actually or arguably conflict with the provisions of sections 7 or 8 of the NLRA may interfere with the open space created by the NLRA for the free play of economic forces." *Healthcare Ass'n of N.Y. State*, 471 F.3d at 107 (quotation marks and

citations omitted). "The framework established in the NLRA was merely a means to allow the parties to reach . . . agreement fairly." *Metro. Life Ins. Co.*, 471 U.S. at 752. "The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." *Id.* at 753 (citation omitted).

In *Metropolitan Life*, the Supreme Court held "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA. Nor do they have any but the most indirect effect on the right of self-organization established in the Act." *Id.* at 755. In this respect, the Court explained "we believe that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety." *Id.* at 756. Indeed, although states are precluded from regulating the bargaining process, "states have traditionally possessed 'broad authority under their police powers to regulate the employment relationship,' and the substantive labor standards that they enact set a baseline for employment negotiations." *Concerned Home Care Providers*, 783 F.3d at 85 (quoting *De Canas v. Bica*, 424 U.S. 351, 356 (1976)). The "crucial inquiry" is whether state action "frustrate[s] effective implementation of the [NLRA's] processes." *Golden State Transit Corp.*, 475 U.S. at 615 (quoting *Machinists*, 427 U.S. at 147-48). "Thus the Court has recognized that it 'cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States.'" *Metro. Life Ins. Co.*, 471 U.S. at 757 (quoting *Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 289 (1971)). "[P]re-emption should not be lightly inferred in

9

this area, since the establishment of labor standards falls within the traditional police power of the State." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987).

The Plaintiffs contend that the law does not qualify as a minimum labor standard. First, they argue the law is not a labor standard because it addresses other topics, such as environmental regulations, outside the scope of labor. Second, they argue that the law's surety provision inherently favors unionization. Neither argument justifies summary judgment for the Plaintiffs.

First, insofar as the licensing scheme established by the ordinance and enforced by the bond requirement is expressly intended to improve compliance with state and federal minimum wage laws, it is most emphatically a law concerned with implementing minimum wage and hour regulations of the sort approved by the Supreme Court in *Metropolitan Life*. The law's concern with minimum labor conditions is not vitiated by the fact that the licensing scheme also addresses other industry problems; a concern for the environment as well as for minimum wage laws does not invalidate the law's relationship to minimum labor conditions.

Second, the Plaintiffs are correct that even a law that addresses such legitimate, non-preempted local concerns may not do so by creating significant pressure on employers to encourage unionization of their employees. At this stage of the proceedings, however, for reasons explained below, we cannot conclude as a matter of law that the ordinance has such an effect.

In its amended order granting the Plaintiffs' motion for partial summary judgment regarding federal preemption and denying the Defendants' corresponding motion for judgment on the pleadings, the district court concluded that "[s]ection 20-542(b)(1) explicitly encourages unionization . . . by imposing a penalty that requires a fivefold increase in the amount of a surety

10

bond required for car washing companies that are not parties to a collective bargaining

agreement or, alternatively, an independent monitoring scheme and large security deposits."

SPA7 (citations omitted). The district court stated that "[p]ressuring businesses to unionize is

impermissible under the NLRA, as it inserts the City directly into labor-management

bargaining." *Id*. (citation omitted). We agree with the Defendants that the district court's

conclusion regarding purported financial pressure, reached before the completion of discovery, is

premature.

To be sure, as the Defendants recognize, a higher surety bond requirement will impose

some costs beyond what a lower bond requirement would impose. But claims of financial

pressure relied upon in granting summary judgment must be supported by undisputed facts

showing the Plaintiffs are entitled to judgment as a matter of law. *See Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 250 (1986). Here, the claims of financial pressure cited by the

Plaintiffs and implicitly accepted by the district court are far from undisputed and fail to show

the NLRA preempts the surety bond provision as a matter of law. For example, the Plaintiffs

represented that the costs of obtaining a higher $150,000 surety bond will likely be between 1%

and 3% of the amount of the bond—in other words, $1,500 to $4,500—while the costs of

obtaining a $30,000 surety bond will likely be $300 to $900. A138. These are relatively minor

differences in cost. The Plaintiffs asserted that car washes "may" be required to obtain CPA-

prepared financial statements because a surety will "typically" wish to review such statements

before deciding whether a given car wash qualifies for a $150,000 bond, but acknowledged there

was "substantial uncertainty about the costs and difficult[y] of securing a bond." A137-39; *see

also* A1270 (calling into question whether bond firms would require CPA-prepared financial

statements). Nor did the Plaintiffs submit sufficient information about their own financial

condition, or that of other non-party car washes, to enable the district court to make a reasoned determination about purported financial pressure. Crucially, the Plaintiffs' claims of financial pressure must be considered in tandem with the financial costs of unionization. To suggest a car wash owner would have to choose between obtaining a $150,000 bond with its attendant costs, whatever they may be, or supporting unionization, at no cost, ignores economic reality.

"Since summary judgment is a 'drastic device,' it should not be granted when there are major factual contentions in dispute. This is particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery." *Nat'l Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975) (citations omitted). "[S]ummary judgment should only be granted if *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quotation marks, citation, and internal editing omitted). "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Id.* (citations omitted). This is because "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250 n.5); *see, e.g.*, *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995) (vacating district court's order granting summary judgment where "[s]ummary judgment was entered before any discovery had taken place" which precluded the plaintiff, the nonmoving party, from having "a full and fair opportunity" to respond to the defendant's claims).

Indeed, Rule 56(d) of the Federal Rules of Civil Procedure authorizes district courts to defer ruling on a motion for summary judgment—or to deny the motion altogether—"[i]f a

nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d)(1); *see Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 374-75 (2d Cir. 1995) (finding the district court was "over-hasty in granting [summary] judgment" and vacating the district court's order where the nonmovant filed an affidavit pointing out the need for further discovery in opposing the motion). Rule 56 also authorizes district courts to "allow time to obtain affidavits or declarations or to take discovery" or to "issue any other appropriate order." Fed. R. Civ. P. 56(d)(2)-(3).

Here, the Defendants filed a Rule 56(d) declaration stating why discovery was necessary to fully refute the Plaintiffs' claims of financial pressure. A1218-26. The Plaintiffs contend the district court properly disregarded the Defendants' Rule 56(d) declaration because the Defendants did not make any effort to obtain the requested discovery between the Plaintiffs' filing of their original motion for summary judgment and the filing of their amended motion. But the Plaintiffs' argument overlooks the fact that while the parties' November 2015 joint stipulation regarding scheduling, A27-29, may not have expressly contemplated a stay of discovery, it nonetheless stated the parties "have agreed to await the promulgation of [the DCA's final rules] to allow plaintiffs the opportunity to file an amended pleading and/or amended/superseding motion for summary judgment and/or preliminary injunction." A27. In fact, a declaration submitted in support of the Plaintiffs' amended motion for summary judgment characterized that stipulation as having agreed the case "would be stayed until the Commissioner of the [DCA] issued rules implementing [the Car Wash Law]." A103. While the Defendants may not have been prohibited from attempting to take discovery during this period, given the parties' joint stipulation and agreement to await the filing of an amended complaint and/or amended motion before proceeding, we cannot say the Defendants' failure to do so precludes

13

them from the relief they now seek. *Cf. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927-28 (2d Cir. 1985) ("A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.").

Whether the Car Wash Law's surety bond provision has the effect of imposing financial pressure on car wash owners to support unionization is relevant in determining whether the law impermissibly interferes with the collective bargaining process to the extent of being preempted by the NLRA. Because there are genuine disputes of material fact with respect to the Plaintiffs' claims of financial pressure—disputes which discovery could reasonably be expected to address—we conclude the district court erred in granting the Plaintiffs' pre-discovery motion for partial summary judgment on federal preemption.

## II.     Severability

In its June 20, 2017 order addressing the parties' motions as to NLRA preemption, the district court declared the Car Wash Law invalid, striking down the entire law. SPA12. The Defendants then filed a motion for reconsideration seeking to sever section 20-542(b)(1)—the subdivision reducing the surety bond requirement for car washes that are party to a collective bargaining agreement with certain protections—from the remainder of the Car Wash Law. A1779-80. In an order dated August 31, 2017, the district court granted the Defendants' request and severed section 20-542(b)(1), allowing the remainder of the Car Wash Law to be enforced. SPA32-34, 36. The Plaintiffs now appeal the district court's order severing section 20-542(b)(1).

"[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (quotation marks and citation omitted). This means that federal courts "may not give 'an opinion

advising what the law would be upon a hypothetical state of facts.'" *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 168 (2d Cir. 2016) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)); *United States v. Yalincak*, 853 F.3d 629, 639 n.11 (2d Cir. 2017) (citing *Abele v. Markle*, 452 F.2d 1121, 1124 (2d Cir. 1971)). Here, severability arises only if any portion of the Car Wash Law is deemed invalid—if no part of the Car Wash Law is preempted, then severability need not be considered. Because we vacate the district court's order with respect to NLRA preemption and remand the case for further proceedings, we decline to express any opinion as to the merits of the district court's severability holding at this point in the litigation.

## CONCLUSION

For the foregoing reasons, the portion of the district court's order appealed from granting the Plaintiffs' motion for summary judgment with respect to NLRA preemption and denying the Defendants' corresponding motion for judgment on the pleadings is VACATED. We also VACATE the district court's order severing section 20-542(b)(1). We REMAND the case to the district court for further proceedings not inconsistent with this opinion.